IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| CORNELIUS RODRIQUEZ WRIGHT, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 125-075 |
| | ) | |
| JOSHUA JONES, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Petitioner, through counsel, brings the above-captioned petition pursuant to 28 U.S.C. § 2254.  Having considered all the relevant pleadings, for the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Petitioner's § 2254 petition be **DENIED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

## I.    BACKGROUND

In July 2007, a Richmond County grand jury indicted Petitioner on one count of malice murder, one count of felony murder, one count of aggravated assault, and two counts of possession of a firearm during the commission of a crime.  (Doc. no. 8-11, pp. 43-46.)[1]  On August 12, 2011, a Richmond County jury convicted Petitioner on all counts.  (Doc. no. 8-12, p. 112.)  The trial court sentenced Petitioner to a life sentence for malice murder, five years for each count of possession of a firearm during the commission of a crime, and twenty years for

---

[1] For ease of reference, the Court cites to the page numbers generated on CM/ECF.

aggravated assault, with Petitioner to serve each sentence consecutively. (Id. at 113.) For purposes of sentencing, the felony murder conviction merged with the malice murder conviction. (Id.) Appointed attorney David Brunk represented Petitioner at trial. (Doc. no. 8-11, p. 103; see also doc. no. 8-12, p. 184.)

Mr. Brunk filed a motion for new trial. (Id. at 122-23.) However, appointed attorney Robert Persse represented Petitioner through the remainder of Petitioner's motion for new trial and direct appeal proceedings. (Id. at 132.) In October 2013, the trial court conducted a hearing and issued a decision denying the motion for new trial. (Id. at 176.)

On March 28, 2016, Petitioner filed a direct appeal raising three enumerated errors:

(1) "[T]rial counsel rendered ineffective assistance of counsel by failing to object to the State's cross-examination of [Petitioner] about his prearrest silence,"

(2) "[T]he trial court erred in excluding evidence of [the victim's] previous violence against third parties," and

(3) "[T]he trial court erred in failing to charge the jury on manslaughter."

(See doc. no. 8-18, pp. 93-123.) In a published opinion, the Supreme Court of Georgia rejected Petitioner's arguments and affirmed the convictions. Wright v. State, 794 S.E.2d 105 (Ga. 2016); (see also doc. no. 8-19.) The Georgia Supreme Court provided the following description of the evidence at trial:

> Construed to support the verdicts, the evidence showed that on December 17, 2006, Wright shot and killed Carmichael following a series of run-ins between Wright and others after Wright allegedly attempted to sell drugs in an area in Augusta, Georgia, that another drug dealer, Michael Edwards, claimed as his exclusive territory. Among the individuals involved in confronting Wright was Carmichael's younger brother, Zeaccatae ("Zeke"), who got into a physical altercation with Wright after Wright verbally threatened him.
>
> Learning of the fight between Wright and his brother, Carmichael announced plans to retaliate against Wright and obtained a ride from Shakeela McNair for himself and a friend, Donnell Houston, to the house where the fight had

occurred. Also riding in the car with McNair and the men was McNair's baby daughter and Megan McClendon, the car's owner. When they arrived at the location, Carmichael exited the vehicle and was immediately confronted by an armed Wright, who briefly exchanged words with Carmichael before shooting him in the leg. After initially falling down, Carmichael quickly got up and ran toward the house chased by Wright. Unable to gain entrance, Carmichael attempted to escape Wright by running down the street, but Wright continued to follow him, firing repeatedly. Hit in the back by several bullets, Carmichael eventually fell wounded onto the sidewalk. Wright then proceeded to stand over Carmichael as he lay on the ground and fire a few final rounds at the victim. Shot a total of five times, Carmichael died at the scene from multiple gunshot wounds. Houston, who ran from the car during the shooting, witnessed the attack, as did McNair and McClendon, who remained in the car with the baby.

Hearing the gunfire, Edwards came out of a nearby house and was also fired upon by Wright, but was uninjured. Wright then approached the women in McClendon's car and McNair begged him not to shoot because the baby was present. Wright finally drove off in a car belonging to his girlfriend and, after briefly hiding out in a motel, traveled by train to New York City where he stayed with relatives. Subsequently identified as the shooter by several eyewitnesses, Wright was eventually apprehended by law enforcement officials in New York and returned to Richmond County to stand trial. Wright testified at trial and admitted to having shot at Carmichael, but claimed he had done so only in self-defense.

Wright, 794 S.E.2d at 107-08.

On September 22, 2017, Petitioner filed a state habeas corpus petition *pro se* in the Superior Court of Tattnall County. (Doc. no. 8-1.) Petitioner's state habeas petition raised the following claims:

(1) Ineffective assistance of trial counsel where counsel:

    a. "[R]endered constitutionally deficient assistance and absent that deficiency there would have been a reasonable probability of a different verdict";

    b. Caused the jury to "determine Defendant's guilt without mention of the exclusion of victim[']s use of narcotics at the time of the incident without use of toxicology evidence";

    c. "[F]ailed to submit any evidence of provocation, use of gun, GSR report, evidence of distort [sic] and mushroomed bullet, in sentencing phase of case in mitigation";

    d. "[F]ailed to challenge exclusion of victim's prior offense by providing

3

(independent) toxicology"; and

    e. "[F]ailed to submit evidence of prior difficulties (acts) between victim and defendant in mitigation as provocation based upon witness testimony";

(2) Ineffective assistance of appellate counsel where counsel:

    a. Unreasonably decided "to exclude errors of trial counsel on appeal regarding toxicology";

    b. "[F]ailed to utilize issues reserved or preserved 'by objection,' for appellate purposes";

    c. Performed "below an objective standard of reasonableness and was unreasonable"; and

    d. "[F]ailed to include trial counsel's unprofessional acts of not presenting material (best) evidence in mitigation";

(3) "Miscarriage of justice" stemming from the failure to test and the destruction of newly discovered evidence;

(4) Violation of the right of confrontation when trial counsel failed to cross examine the state's "star" witness and rebut the witness's testimony with a "toxicology and GSR report";

(5) Prosecutorial misconduct where the prosecution:

    a. Failed to provide Petitioner with exculpatory evidence of the victim's drug use;

    b. Became emotionally involved and "willfully baggered [sic] [Petitioner] numerous times while on stand";

    c. Repeatedly mischaracterized evidence to the jury;

    d. "[D]isregarded all evidence of provocation;"

    e. Displayed personal bias against Petitioner;

    f. "[A]llowed emotion to dictate over reason . . . in repeated baggerings [sic] of" Petitioner; and

    g. Failed to prove all elements of the malice murder conviction;

(6) "Violation of due process" where the court

    a. "[E]rred in allowing witness to testify . . . as a result of activities used to obtain testimony";

    b. "[E]rred in its ruling concerning witness character in issue";

    c. [E]rred in denying Petitioner's motion for mistrial;

    d. "[E]rred in its ruling concerned what was said by witness on juvenile testimony";

    e. "[F]ailed to look into issue as promised on record";

    f. Allowed proffered "evidence to go with jury into jury room during

deliberations";

g.  Failed to instruct the jury not to consider the victim's memorial;
h.  Failed to reprimand the prosecution for "baggering" [sic] [Petitioner];
i.  Denied prosecutor's ability to "ask about weapon" by sustaining State's objection;
j.  Allowed the jury to visit the crime scene years later;
k.  Denied Petitioner's motion for a directed verdict;
l.  Overruled Petitioner's objection "upon prosecutor's second act of baggering [sic] defendant;"
m. Overruled Petitioner's objection "upon prosecutors third act of baggering [sic] [Petitioner]";
n.  Failed to reiterate the evidence or facts to the jury;
o.  Overruled Petitioner's objection to the prosecution's mischaracterization "tactic";
p.  Failed to answer the jury's questions at the suggestion of counsel;
q.  Failed to give jury instruction nineteen and twenty; and
r.  Granted the "State's motion in limine to exclude evidence of acts of violence by the victim."

(Id. at 5-14.)

The state habeas court held an evidentiary hearing on December 19, 2018, at which Mr. Persse testified about his representation during Petitioner's motion for new trial and direct appeal proceedings. (Doc. no. 8-11, pp. 1-25.) On June 3, 2021, Petitioner obtained counsel. (Doc. no. 8-2, p. 2.) Petitioner's newly acquired counsel moved to amend the state habeas petition, but the state habeas court denied this request because the state habeas record had already closed on December 19, 2018. (Id.)

On August 30, 2022, the state habeas court denied the petition on all grounds. (Doc. no. 8-2.) The state habeas court concluded grounds one, three, four, five, and six were procedurally defaulted under O.C.G.A. § 9-14-48(d). (Id. at 3, 7-11.) The Court further concluded ground two lacked merit after applying the Strickland analysis. (Id. at 4-7.) On February 17, 2023, the state habeas court re-entered its final order denying relief, (doc. no. 8-4), because Petitioner had not received a copy of the final order in time to timely appeal it,

(doc. no. 8-3). On March 20, 2023, Petitioner, through counsel, applied for a certificate of probable cause ("CPC") before the Georgia Supreme Court, (doc. no. 8-5), but the Georgia Supreme Court dismissed the appeal on March 19, 2024, because the state habeas court failed to vacate the original August 30, 2022 final order, (doc. no. 8-6). The state habeas court then vacated its original final order denying relief and re-entered the order on April 12, 2024.[2] (Doc. no. 8-7.)

Thereafter, Petitioner timely applied for a CPC before the Georgia Supreme Court on May 10, 2024. (Doc. no. 8-8.) His CPC application raised the following enumerations of error:

(1) The habeas court failed to consider Petitioner's motion for leave to amend after Petitioner obtained counsel;

(2) The habeas court erroneously denied Petitioner relief on the ineffective assistance of counsel grounds; and

(3) The habeas court erroneously concluded Petitioner procedurally defaulted on his other claims.

(Id. at 5-8.)

The Georgia Supreme Court denied Petitioner's CPC without comment on January 14, 2025. (Doc. no. 8-9, Wright v. Allen, No. S24H1022 (Ga. Jan. 14, 2025).)

On March 28, 2025, Petitioner, proceeding with counsel Jason White, timely filed the above-captioned § 2254 petition. (Doc. no. 1.) Petitioner does not specifically enumerate the grounds he raises in the § 2254 petition. Rather, the petition contains a "Claim for Relief"

_____

[2] The April 12, 2024 final order is identical to the August 30, 2022 order, (doc. no. 8-2), and February 17, 2023 order, (doc. no. 8-4), except for the concluding paragraph, which properly vacates the original order, (doc. no. 8-7, p. 10). Because the April 12th order properly vacated the earlier order, the Court cites to this order when discussing the state habeas court's final order denying relief.

6

section, in which Petitioner "expressly raises all grounds in the [state habeas] final order, including those that were erroneously concluded to be procedurally defaulted by the state habeas court and Georgia Supreme Court." (Id. at 19.)  He then raises ineffective assistance on appeal and identifies four grounds for this claim.  (Id. at 20-21.)  He further claims the state habeas court and Georgia Supreme Court failed to properly assess his ineffective assistance of appellate and trial counsel claims.  (Id.)  He also challenges the state habeas court's conclusion that Petitioner procedurally defaulted over twenty-five grounds as erroneous.  (Id.)  Lastly, he avers the state habeas court's denial of the motion to amend the state petition after Petitioner retained counsel was "egregious."  (Id. at 21-22.)

Respondent filed an answer-response to the petition on May 30, 2025, (doc. no. 6), as well as a brief in support of the answer, (doc. no. 7.)  Respondent's brief construes the petition as raising five grounds for relief.  (See doc. no. 7.)  The Court finds these five grounds accurately and completely reflect the claims raised in support of habeas relief in Petitioner's § 2254 petition and therefore adopts this numbering method.  Accordingly, based on this system of organization, Petitioner's § 2254 petition raises the following grounds for relief:

(1)     Ineffective assistance of appellate counsel in that appellate counsel:

    (a)     unreasonably "exclude[ed] errors of trial counsel on appeal regarding toxicology";

    (b)     "[F]ailed to utilize issues preserved by objection for appellate purposes";

    (c)     Performed below an objective standard of reasonableness and was unreasonable; and

    (d)     "failed to include trial counsel's unprofessional acts of failing to present material evidence in mitigation";

(2)     The state habeas court and the Georgia Supreme Court failed to properly address the claims of ineffective assistance of trial and appellate counsel;

(3)     The state habeas court's conclusion Petitioner procedurally defaulted over twenty-five grounds because he did not raise them on appeal was erroneous;

(4)     The state habeas court erred in denying Petitioner the ability to reopen and amend his state petition after he obtained counsel; and

(5)     All other grounds for relief raised at the state habeas court.

(Id. at 19-21.)

In the answer-response, Respondent argues federal relief should be denied on all claims because the Court should give deference to the state habeas court's decisions for ground one, grounds two through four are not cognizable in habeas, and the all claims raised in ground five are procedurally defaulted. (See id.) Petitioner did not file a brief in support of his petition.

## II.     NO RIGHT TO EVIDENTIARY HEARING

At the conclusion of his federal petition, Petitioner requests a hearing. (Doc. no. 1, p. 22.) However, for the reasons described below, this request fails.

### A.     Analytical Framework for Considering Hearing Request

When determining whether an evidentiary hearing is warranted, the Court must consider the restrictions of § 2254(e)(2), as amended by the Antiterrorism and Effective Death Penalty Act of 1996, ("AEDPA"):

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that - -
>
> (A)     the claim relies on - -
> > (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> >
> > (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B)     the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable

factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).  Because this code section applies only when an "applicant has failed to develop the factual basis of a claim," an evidentiary hearing is prohibited where a petitioner fully developed the factual basis of his claim in state court.

A petitioner who has "failed to develop the basis for a claim" must establish "a factual predicate that could not have been previously discovered through the exercise of diligence." § 2254(e)(2)(A)(ii).  Diligence is a reasonable attempt, in light of the information then available, to investigate and pursue claims in state court.  Williams v. Taylor, 529 U.S. 420, 436 (2000).  A petitioner is not diligent when he has failed to present evidence despite notice, access to the evidence, and sufficient time to prepare.  Pope v. Sec'y Dep't of Corr., 680 F.3d 1271, 1289 (11th Cir. 2012).  Petitioner must also "persuade the [Court] that the proffered evidence would affect the resolution of the claim."  Breedlove v. Moore, 74 F. Supp. 2d 1226, 1233 (S.D. Fla. 1999) (citing Bolender v. Singletary, 16 F.3d 1547, 1555 n.9 (11th Cir. 1994)); see also Stephens v. Kemp, 846 F.2d 642, 650-51 (11th Cir. 1988) (same).  "[I]f a habeas petition does not allege enough specific facts that, if they were true, would warrant relief, the petitioner is not entitled to an evidentiary hearing."  Chavez v. Sec'y Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011).

The Court must also consider § 2254(d), as follows:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

9

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"'[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits' . . . and therefore 'evidence introduced in federal court has no bearing on § 2254(d)(1) review.'" Landers v. Warden, 776 F.3d 1288, 1295 (11th Cir. 2015) (quoting Cullen v. Pinholster, 563 U.S. 170, 181, 185 (2011)) (internal citations omitted). The restriction "applies even more clearly to § 2254(d)(2), which contains an explicit textual restriction to evaluate the state court ruling only 'in light of the evidence presented in the State court proceeding.'" Id. (quoting § 2254(d)(2)).

Furthermore, "although § 2254(e)(2) permits federal habeas courts to take new evidence in an evidentiary hearing, that provision applies only when the petitioner has either satisfied § 2254(d), or the federal court is deciding claims that were not adjudicated on the merits in state court." Locke v. Sec'y, Fla. Dep't of Corr., No. 5:15cv55/RV/EMT, 2016 WL 3647795, at *32 (N.D. Fla. May 12, 2016) (citing Cullen, 563 U.S. at 185-86), adopted by, 2016 WL 3647875 (N.D. Fla. June 30, 2016); see also Pope v. Sec'y, Fla. Dep't of Corr., 752 F.3d 1254, 1263 (11th Cir. 2014) ("§ 2254(d) must be satisfied before a federal habeas court may consider any § 2254(e)(2) evidence.") (citing Cullen, 563 U.S. at 181-82).

**B.    Petitioner Is Not Entitled to an Evidentiary Hearing**

Petitioner is not entitled to an evidentiary hearing for several reasons. First, Petitioner has not satisfied § 2254(d) for Ground 1, which was addressed on the merits in the state habeas court, for the reasons explained in Section IV.A infra. Thus, he is not entitled to a hearing for any claim raised in Ground 1.

Regarding the remaining claims not adjudicated on the merits in state court, which are raised in Grounds 2, 3, 4, and 5 of his federal petition, Petitioner is not entitled to an evidentiary hearing because he has entirely failed to show the facts underlying any of his claims would be sufficient to establish by clear and convincing evidence that but for the alleged constitutional error no reasonable factfinder would have found him guilty. Significantly, Grounds 2, 3, and 4 do not even relate to the underlying offenses but rather focus on alleged errors occurring in the state habeas proceedings.

As to Ground 5, which raises a variety of claims and alleged errors regarding Petitioner's trial and sentencing, nowhere does Petitioner argue he failed to develop the factual basis of any of his claims, much less does he argue he could not have previously discovered any facts through the exercise of diligence. (See doc. no. 1.) In other words, Petitioner has also not argued, let alone satisfied, any of the requirements outlined above with respect to development of the factual basis for a claim or establishment of due diligence concerning the investigation and pursuit of his claims in state court. Instead, he merely requests a hearing without providing further argument in support of this request. (Id. at 22.) Nothing in the record suggests Petitioner was prevented in any way from investigating his claims. He further does not show any of the facts underlying his claims establish by clear and convincing evidence that no reasonable factfinder would have found him guilty. Indeed, he offers no such facts or evidence, much less facts or evidence that would affect the resolution of his federal claim for relief.

Accordingly, the request for an evidentiary hearing should be **DENIED**.

11

## III.    STANDARD OF REVIEW

Under § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim - -
>
> (3)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (4)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has characterized § 2254(d) as "part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." Harrington v. Richter, 562 U.S. 86, 103 (2011). Accordingly, § 2254(d) creates a "difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." Cullen, 563 U.S. at 181 (citations omitted).

In Brown v. Payton, 544 U.S. 133, 141 (2005), the Supreme Court explained the difference between the "contrary to" and "unreasonable application" clauses in § 2254(d)(1) as follows:

> A state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result. A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner.

12

Id. (internal citations omitted).  Thus, under § 2254(d)(1), it is not enough to demonstrate that a state court's decision is wrong; "even clear error will not suffice."  White v. Woodall, 572 U.S. 415, 419 (2014).  Rather, the habeas petition must show the state court decision was "objectively unreasonable."  Wiggins v. Smith, 539 U.S. 510, 520-21 (2003); see also Woods v. Donald, 575 U.S. 312, 316 (2015) (a petitioner must show the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").  A showing that the state court's determination was unreasonable is a substantially higher threshold than whether it was correct.  Reed v. Sec'y, Fla. Dep't of Corr., 767 F.3d 1252, 1260-61 (11th Cir. 2014); Evans v. Sec'y, Dep't of Corr., 703 F.3d 1316, 1325 (11th Cir. 2013).  In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."  Cullen, 563 U.S. at 181.

Moreover, under AEDPA's highly deferential standard of review for state court factual determinations, a federal habeas court may only grant relief if a state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  Additionally, § 2254(e)(1) requires the Court "to presume the correctness of state courts' factual findings" unless the habeas petitioner rebuts that presumption "with clear and convincing evidence."  Nejad v. Att'y Gen., State of Ga., 830 F.3d 1280, 1289 (11th Cir. 2016) (citing Schriro v. Landrigan, 550 U.S. 465, 473-74 (2007)); see also Reese v. Sec'y, Fla. Dep't of Corr., 675 F.3d 1277, 1287 (11th Cir. 2012) ("In a habeas proceeding, our review of findings of fact by the state court is even more deferential than under a clearly erroneous standard of review.").  "The Supreme Court has not yet defined § 2254(d)(2)'s precise relationship to

§ 2254(e)(1) . . . [w]hatever that precise relationship may be, a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Tharpe v. Warden, 834 F.3d 1323, 1336 (11th Cir. 2016) (citing Wood v. Allen, 558 U.S. 290, 301 (2010)).

## IV.   DISCUSSION

### A.   Applying AEDPA Deference to the Ineffective Assistance of Counsel on Appeal Claims Previously Rejected by the State Courts, Federal Habeas Relief Is Not Warranted

#### 1.   Under Strickland v. Washington, Petitioner Bears a Heavy Burden on Ineffective Assistance of Counsel Claims

Ineffective assistance of counsel claims are subject to the two-part test enunciated in Strickland v. Washington, 466 U.S. 668 (1984). Under the first prong, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. In this regard, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001). "An attorney's actions need only fall within 'the wide range of professionally competent assistance' to pass constitutional muster," and "courts should not second-guess counsel's assistance" because "[e]ven the best criminal defense attorneys would not defend a particular client the same way." Philmore v McNeil, 575 F.3d 1251, 1260 (11th Cir. 2009) (citations omitted).

Strategic decisions are entitled to a "heavy measure of deference." Strickland, 466 U.S. at 691. "[A] court should be highly deferential to those choices made by defense counsel in the conduct of a trial that are arguably dictated by a reasonable trial strategy." Devier v. Zant, 3 F.3d 1445, 1450 (11th Cir. 1993). "Which witnesses, if any, to call . . . is the epitome of a

14

strategic decision, and it is one that [the Court] will seldom, if ever, second guess." Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (*en banc*). Indeed, "strategic choices are 'virtually unchallengeable.'" Provenzano v. Singletary, 148 F.3d 1327, 1332 (11th Cir. 1998) (citing Strickland, 466 U.S. at 690 and Waters, 46 F.3d at 1522). "[C]ounsel will not be deemed unconstitutionally deficient because of tactical decisions . . . , and [t]he presumption of reasonableness is even stronger when we are reviewing the performance of an experienced trial counsel." Michael v. Crosby, 430 F.3d 1310, 1320 (11th Cir. 2005) (internal citations omitted).

To show that an attorney's choice of strategy is unreasonable, a petitioner must show that no competent counsel would have made such a choice. Strickland, 466 U.S. at 690; Adams v. Wainwright, 709 F.2d 1443, 1445 (11th Cir. 1983) (*per curiam*) ("Even if in retrospect the strategy appears to have been wrong, the decision will be held ineffective only if it was so patently unreasonable that no competent attorney would have chosen it." (citations omitted)). The purpose of this review is not to grade counsel's performance because, of course, every lawyer "could have done something more or different. . . . But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (*en banc*). Strickland requires application of a totality-of-the-circumstances standard because "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." Khan v. United States, 928 F.3d 1264, 1273 (11th Cir. 2019) (citation omitted).

"Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." Fugate v. Head,

15

261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted . . . ." Ward v. Hall, 592 F.3d 1144, 1164 (11th Cir. 2010) (citing Waters, 46 F.3d at 1512). "The reasonableness of counsel's performance is evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances . . . ." Michael, 430 F.3d at 1319 (citations omitted).

As emphasized by the Eleventh Circuit:

[D]eferential review under Strickland does not ask whether counsel could possibly or ideally have been more effective. "The test for ineffectiveness is not whether counsel could have done more." We do not ask whether an attorney's representation "deviated from best practices or common custom," and we should resist the temptation to second-guess an attorney with the benefit of our hindsight. Rather, Strickland asks only "whether, in light of all the circumstances, the identified acts or omissions were outside the range of professionally competent assistance." . . . We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. . . . We are not interested in grading lawyers' performances.

Jenkins v. Comm'r, Ala. Dep't of Corr., 963 F.3d 1248, 1269-70 (11th Cir. 2020) (internal citations omitted), cert. denied, Jenkins v. Dunn, 141 S. Ct. 2635 (2021).

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697; see Brooks v. Comm'r, Ala. Dep't of Corr., 719 F.3d 1292, 1301 (11th Cir. 2013). Under the prejudice prong of Strickland, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would

have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

As the Eleventh Circuit has ruled, a petitioner must affirmatively prove prejudice that would undermine the results of the proceedings because "attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some conceivable effect on the outcome of the proceeding is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations and internal quotations omitted).  Indeed, the Court must examine the entirety of counsel's performance and the effect of such "in light of the record as a whole to determine whether it was reasonably probable that the outcome would have been different." Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989).

The Strickland test also applies to claims of ineffective assistance of appellate counsel, see Dell v. United States, 710 F.3d 1267, 1273 (11th Cir. 2013), with the additional consideration that a criminal defendant has no "constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." Jones v. Barnes, 463 U.S. 745, 751 (1983); see also Philmore, 575 F.3d at 1264 (explaining appellate counsel not required to raise every non-frivolous issue).  Appellate counsel is not ineffective for failing to raise claims 'reasonably considered to be without merit.'" United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000) (citation omitted).  Moreover, it is up to appellate counsel to winnow out weaker arguments, even if they may have merit, and select the most promising issues for review. Jones, 463 U.S. at 751-52; Philmore, 575 F.3d at 1264.  Prejudice turns on whether

"the neglected claim would have a reasonable probability of success on appeal." Philmore, 575 F.3d at 1265 (citation omitted).

In the context of an ineffective assistance claim that was previously rejected by a state court, the petitioner bears the even heavier burden of "show[ing] that the [state courts] applied Strickland to the facts of his case in an objectively unreasonable manner." Bell v. Cone, 535 U.S. 685, 699 (2002); see also Cave v. Sec'y for Dep't of Corr., 638 F.3d 739, 748 (11th Cir. 2011) (noting that, where the state court has previously adjudicated a claim on the merits, the petitioner "has the additional burden of demonstrating that the state court's application of this demanding standard was not merely wrong, but objectively unreasonable"). "[I]t is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly." Bell, 535 U.S. at 699. "In short, an *unreasonable* application of federal law is different from an *incorrect* application of federal law." Barwick v. Sec'y, Fla. Dep't of Corr., 794 F.3d 1239, 1245 (11th Cir. 2015) (internal quotations and citations omitted).

"Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Richter, 562 U.S. at 105. Stated otherwise, federal habeas corpus relief is available on a Strickland claim "only if the state habeas court *unreasonably* determined that trial counsel performed reasonably - *i.e.*, where there is no possibility fairminded jurists could disagree that defense counsel acted outside the range of professionally competent assistance. . . ." Ledford v. Warden, Ga. Diagnostic Prison, 975 F.3d 1145, 1158 (11th Cir. 2020) (internal quotation

18

marks and citations omitted), *cert. denied*, 141 S. Ct. 2832 (2021).  For Petitioner "to prevail, then, he would have to show that *no* reasonable jurist could find that his counsel's performance fell within the wide range of reasonable professional conduct."  Raheem v. GDCP Warden, 995 F.3d 895, 909 (11th Cir. 2021).

"Surmounting Strickland's high bar is never an easy task."  Richter, 562 U.S. at 105 (citing Padilla v. Kentucky, 559 U.S. 356, 371 (2010)).  Moreover, because "[t]he standards created by Strickland and § 2254(d) are both highly deferential, . . . when the two apply in tandem, review is doubly so."  Richter, 562 U.S. at 105 (quotation marks and citations omitted); see also Yarborough v. Gentry, 540 U.S. 1, 4 (2003) (review of attorney performance is "highly deferential-and doubly deferential when it is conducted through the lens of federal habeas").  "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment . . . .  [F]ederal courts are to afford both the state court and the defense attorney the benefit of the doubt."  Woods v. Etherton, 578 U.S. 113, 117 (2016) (*per curiam*) (internal quotations and citations omitted).

To summarize, for Petitioner to obtain federal habeas relief, "[t]he state court decision must be so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair[-]minded disagreement."  Id.  That is, if fairminded jurists could reach differing conclusions, this Court owes deference to the state court decision, and federal relief is not available.  Shinn v. Kayer, 592 U.S. 111, 120 (2020) (*per curiam*).  "Or, in more concrete terms, a federal court may grant relief only if *every* 'fairminded juris[t]' would agree that *every* reasonable lawyer would have made a different decision."  Dunn v. Reeves, 594 U.S. 739-40 (2021) (*per curiam*) (emphasis in original) (citation omitted).  "The Strickland standard is a general one, so the range of reasonable

applications is substantial." Richter, 562 U.S. at 105; see also Sexton v. Beaudreaux, 584 U.S. 961, 968 (2018) ("[B]ecause the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." (citation omitted)); Woods, 575 U.S. at 316 ("AEDPA's standard is intentionally difficult to meet.").

Finally, regarding Petitioner's ineffective assistance of appellate counsel claims based on trial counsel's ineffectiveness raised in Grounds 1(a) and 1(d), there must be a showing of merit to an underlying ineffective assistance of trial counsel claims. See Payne v. Allen, 539 F.3d 1297, 1314-15 (11th Cir. 2008). The Court analyzes these claims in turn below.

### 2. The State Courts' Application of Strickland to Petitioner's Ineffective Assistance of Appellate Counsel Claims in Ground 1 Was Not Objectively Unreasonable

Petitioner argues Mr. Persse's ineffectiveness "includes but is not limited to" (a) failing to raise trial counsel's errors on appeal regarding toxicology; (b) failing to raise on appeal issues preserved by objection; (c) performing below an objective standard of reasonableness; and (d) failing to raise trial counsel's failure to present material mitigation evidence on appeal. (Doc. no. 1, pp. 20-21.) Applying Strickland, the state habeas court analyzed Petitioner's claims that appellate counsel was ineffective and determined these claims lacked merit. (Doc. no. 8-7, pp. 4-7.)

The Georgia Supreme Court denied Petitioner's request for a CPC in a two-sentence order: "[u]pon consideration of the application for certificate of probable cause to appeal the denial of habeas corpus, it is ordered that it be hereby denied. All the Justices concur." (Doc. no. 8-9.) Because the state supreme court decision did not come accompanied with reasons, this Court "should 'look through' the unexplained decision to the last related state-court

20

decision that does provide a relevant rationale" when determining, pursuant to 28 U.S.C. § 2254(d), whether the state court decision was reasonable.  Wilson v. Sellers, 584 U.S. 120, 122 (2018).  The Court is also guided by AEDPA's mandate that factual determinations made by a state court are presumptively correct unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."  Tharpe, 834 F.3d at 1336.

Thus, the Court turns its attention to the state habeas court's reasoning, as it is the last state court to decide Petitioner's federal ineffective assistance of counsel claim in a reasoned opinion.  See Wilson, 584 U.S. at 125.  As discussed below, the state habeas court correctly identified and applied the Strickland analysis to determine Petitioner did not show appellate counsel's performance was deficient.

### a. Ground 1(a): Appellate Counsel's Failure to Raise Trial Counsel's Errors Regarding Toxicology

Petitioner argues in Ground 1(a) of his federal petition, as he did in his state petition, that Mr. Persse was ineffective for failing to claim on appeal that Mr. Brunk provided ineffective assistance at trial by failing to use toxicology evidence about the victim.  (Doc. no. 1, p. 21.)

### i. Background

Mr. Brunk was appointed to represent Petitioner at trial.  (Doc. no. 8-11, p. 103.)  Mr. Persse was appointed to represent Petitioner during the motion for new trial proceedings and direct appeal.  (Doc. no. 8-12, p. 132.)  Mr. Persse was admitted to the Georgia bar in November 1990, clerked for a superior court judge after graduating from law school and

21

worked in a civil firm for about five years. (Doc. no. 8-11, p. 7.) Thereafter, since the late 1990s, Mr. Persse predominately worked as a criminal defense attorney, both at trial and on appeal. (Id. at 7-8.) From 2004 to 2015, he served as a public defender in the Ogeechee Circuit in Statesboro, Georgia, and in 2015, he transferred to the public defender office in Savannah, Georgia. (Id. at 8.) While working in Statesboro, he handled conflict appeals cases from Augusta, Georgia. (Id.) Mr. Persse was appointed to Petitioner's case through the conflict appeals assignment process. (Id.)

At the state habeas evidentiary hearing, Mr. Persse testified that he reviewed the trial transcript to identify issues to be raised in Petitioner's appeal. (Id. at 9.) He also discussed the appeal with Petitioner, as well as with Mr. Brunk. (Id.) After reviewing the transcript, Mr. Persse narrowed the appeal down to "three main issues." (Id.) He testified that his standard practice in working on appeals is to "narrow [g]rounds to those that could actually be serious enough to warrant reversal," which is typically between three to five issues. (Id. at 9-10.) Mr. Persse stated that the three issues raised on appeal were the strongest issues he saw at the time, and he believed "each one of them arguably could have resulted in reversal of some or all of the convictions." (Id. at 11.) He further testified the claim of trial counsel ineffective assistance he raised on appeal about Mr. Brunk's failure to object to the prosecution's cross-examination of Petitioner was "the strongest issue [he] saw with regard[] to [Mr. Brunk's] performance." (Id. at 12.) He also noted he pursued a second ineffective assistance of trial counsel claim based on Georgia's constitutional protections for free speech during the motion for new trial stage, but he ultimately did not raise this ground on direct appeal. (Id. at 13-14.)

Mr. Persse testified he did not think Mr. Brunk's alleged errors concerning toxicology evidence about the victim constituted ineffective assistance. (Id. at 11-12.) In his state habeas

22

petition, Petitioner claimed Mr. Brunk was ineffective for "failing to challenge [the] exclusion of [the] victim's prior [violence] by providing (independent) toxicology,"[3] and that Mr. Persse was ineffective for not raising this error on appeal.  (Doc. no. 8-1, pp. 8-9.)  Prior to trial, the trial court entered an order allowing the defense to conduct "independent testing" of the deceased victim's blood, hair, and urine samples.  (Doc. no. 8-11, pp. 144-45.)  The trial court further instructed the Georgia Bureau of Investigation to hold the samples "indefinitely" until receiving further instruction from the trial court.  (Id. at 145.)  Relatedly, the trial court also excluded evidence of the victim's prior acts of violence.  (Id. at 164-65.)  The trial court reasoned Petitioner failed to demonstrate the victim was the aggressor, as is required to establish the admissibility of the victim's prior acts of violence.  (See id.)

At the state habeas hearing, Mr. Persse recalled some discussion about the victim having narcotics in his system at the time of his death.  (Doc. no. 8-11, pp. 11-12.)  He could not recall whether a toxicology report revealing there were chemicals in the victim's system existed, or if Mr. Brunk had this report but did not use it.  (Id. at 15-16.)  During Petitioner's cross-examination of Mr. Persse, Petitioner clarified the trial court permitted the defense to conduct independent testing because the prosecution had a copy of the toxicology report, but the defense never received one.  (Id. at 18.)  However, Mr. Brunk never conducted this independent testing.  (Id.)

Mr. Persse testified if the samples had been tested and revealed "all this bad stuff" in the victim's system, and Mr. Brunk did not pursue this issue, then there "might" be an

_____

[3] Petitioner wrote "victim's prior offense" in his state habeas petition.  (Doc. no. 8-1, p. 8.) However, it is clear he is describing defense counsel's failure to provide independent toxicology evidence to challenge the trial court's exclusion of evidence about the victim's prior acts of violence.  (See doc. no. 8-11, pp. 11-12, 124, 164-65.)

argument. (Id. at 21.)  However, he also referenced a recent Georgia Supreme Court decision finding the "mere fact" that a murder victim has drugs in their system is not relevant unless this evidence can be tied to expert testimony that the substance would have increased the victim's aggressiveness. (Id. at 12.)  Mr. Persse did not remember there being any such expert testimony. (Id.)

In its final order denying habeas relief, the state habeas court concluded Mr. Persse did not render ineffective assistance for not raising this ground because Petitioner failed to establish the substances caused the victim to be more aggressive. (Doc. no. 8-7, p. 5.)  The state habeas court noted Petitioner did not present this evidence at trial, nor was there any expert witness testimony purporting to prove that the substances caused the victim to be more aggressive during the incident. (Id.)  The state habeas court cited the Georgia Supreme Court decision Mondragon v. State for the proposition that "a toxicology report on a victim is inadmissible where the defendant is unable to show how drugs in the victim's system may have affected his behavior at the time of his encounter with the defendant." (Id. (citing 823 S.E.2d 276, 304 Ga. 843 (2019).)  Thus, the state habeas court concluded a toxicology report would not have been admissible at trial. (Id.)  Accordingly, the state habeas court found Mr. Persse was not ineffective because Petitioner failed to show he performed deficiently or that this performance prejudiced Petitioner. (Id. at 6-7.)

### ii.    Analysis

The state habeas court reasoned toxicology evidence would not have been admissible at trial because Petitioner failed to show that the alleged substances would have made the victim more aggressive at the time of the incident, as required under Georgia law. (Doc. no. 8-7, p. 5.)

Because Petitioner is challenging a state court ruling that rests on findings of fact, he must clear two hurdles of rebutting with "clear and convincing evidence" the presumption of correctness that attaches to the findings of fact and overcoming the deference owed to the state court's legal decision. See Whatley v. Warden, Ga. Diagnostic & Classific. Ctr., 927 F.3d 1150, 1175 (11th Cir. 2019). Moreover, even though Petitioner's current ineffective assistance claim is one of constitutional dimension, this Court should "defer to the state's construction of its own law" when the federal ineffective assistance claim is based on counsel's failure to raise an issue of state law. Pinkney v. Sec'y, DOC, 876 F.3d 1290, 1295 (11th Cir. 2017); see also Agan v. Vaughn, 119 F.3d 1538, 1549 (11th Cir. 1997) ("[S]tate courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters."). Therefore, when considering under the current circumstances "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard," Pinkney, 876 F.3d at 1295, the Court presumes the state habeas court knows, and correctly applied, Georgia law. Moreover, Petitioner has the burden of proof on his claims and to complete the habeas record with the relevant records from trial. Holt v. Ebinger, 814 S.E.2d 298, 301 (Ga. 2018).

The state habeas court concluded toxicology evidence was inadmissible at trial because Petitioner did not show how the alleged drugs in the victim's system may have affected the victim's behavior at the time of the incident, relying on Mondragon v. State, 304 Ga. 843 (2019). Even assuming Mr. Brunk was deficient for not conducting independent testing of the victim, Petitioner fails to establish how this failure would have prejudiced him. Petitioner offers no argument or evidence to explain why the toxicology evidence would have been admissible at trial or how the trial court misapplied Georgia law, and thus he fails to show that trial counsel was ineffective for not pursuing independent testing and raising this evidence at

trial. (See doc. no. 1.) Therefore, the state habeas court's conclusion on this point was not unreasonable because Mr. Persse testified he determined the toxicology argument lacked merit in light of the Georgia Supreme Court decision and the overall absence of evidence showing the substances in the victim's system affected his behavior. Although the Mondragon case was decided after Petitioner's trial, there is nothing to suggest the applicable law was different at the time of Petitioner's trial.

Thus, it was not objectively unreasonable for the state habeas court to find Petitioner failed to show deficiency or prejudice for this claim. After all, appellate counsel need not raise meritless arguments on appeal. Nyhuis, 211 F.3d at 1344. Accordingly, Petitioner fails to show error in the state habeas decision that was "well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Woods, 575 U.S. at 316.

In sum, the state court's decision to reject the ineffective assistance of appellate counsel claim currently raised as Ground 1(a) was not an unreasonable application of Strickland or based on an unreasonable determination of the facts in light of the evidence presented. This claim provides no basis for federal habeas corpus relief.

> **b.      Ground 1(b): Appellate Counsel's Failure to Use Issues Preserved by Objection**

Petitioner argues in Ground 1(b) of his federal petition, as he did in his state petition, that he received ineffective counsel on appeal because Mr. Persse failed to raise issues preserved by objection on appeal. (Doc. no. 1, p. 21.)

> **i.      Background**

At the state habeas evidentiary hearing, Mr. Persse testified that when he works on appeals, his "goal is to narrow [g]rounds to those that could actually be serious enough to

26

warrant reversal," which typically ends up being between three to five grounds. (Doc. no. 8-11, pp. 9-10.) He then explained he raised three issues directly to the Georgia Supreme Court when applying this approach in Petitioner's direct appeal. (Id.) He testified these three issues were the "strongest issues" he saw at the time. (Id. at 11.) He also stated he only raised errors on appeal he believed would result in Petitioner's murder conviction being overturned. (Id. at 17.) He explained he did not raise every objection made at trial on appeal because "[e]very little error doesn't [overturn a conviction]," and he instead chooses to "get the [Georgia] Supreme Court's attention by focusing on the big stuff." (Id. at 17-18.) If he did not raise an issue on appeal, he explained it was "because [he] didn't think [it] would have [] [made] a difference" in the appeal. (Id. at 18.)

### ii.    Analysis

The state habeas court applied Strickland to this claim and concluded it was meritless. (Doc. no. 8-7, pp. 5-6.) In doing so, the state habeas court pointed to Mr. Persse's testimony that he only raised "the most viable issues" on appeal, and that if he did not raise one, it was one he did not think would have "benefitted Petitioner" to have raised on appeal. (Id. at 5.) The state habeas court then reasoned an appellate attorney's decisions about what to raise on appeal is presumptively correct absent a contrary showing by the petitioner, as this type of decision is a strategic one. (Id. at 5-6.) For these reasons, the state habeas court concluded Petitioner failed to show deficient performance or prejudice. (Id. at 6-7.)

Petitioner has identified nothing to support his argument that the state habeas court's adjudication of Ground 1(b) was contrary to, or involved an unreasonable application of, Strickland. (See doc. no. 7, p. 1.) Indeed, Petitioner does not even specify the issues Mr. Brunk preserved for appeal that he contends Mr. Persse was ineffective for failing to raise,

either in his state habeas petition or federal habeas petition. (See doc. nos. 1, 8-1.) The absence of such information is significant because it is Petitioner's burden to prove ineffective assistance, Fugate, 261 F.3d at 1217. Thus, the state court's decision to reject Petitioner's claim that Mr. Persse provided ineffective assistance of counsel by failing to raise various unspecified grounds on appeal as described in Ground 1(b) was not an unreasonable application of Strickland or based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, Ground 1(b) provides no basis for federal habeas relief.

c.      **Ground 1(c): Appellate Counsel's Performance Fell Below an Objective Standard of Reasonableness**

Petitioner argues in Ground 1(c) of his federal petition, as he did in his state petition, that he received ineffective assistance on appeal because Mr. Persse's performance "fell below an objective standard of reasonableness and was unreasonable." (Doc. no. 1, p. 21.) The state habeas court concluded this ground did not specify the ways in which Mr. Persse's performance was unreasonable and thus construed it as "apply[ing] to the other arguments" advanced in Petitioner's state habeas petition regarding appellate counsel ineffectiveness. (Doc. no. 8-7, p. 6.) The state habeas court found Petitioner failed to establish ineffective assistance of appellate counsel for any of the other three subparts raised in his state habeas petition, characterized in the instant Report and Recommendation as Grounds 1(a), 1(b), and 1(d). (Id. at 5-7.) For the reasons explained in Sections IV.A.2.a and b *supra*, and Section IV.A.2.d *infra*, after applying the requisite AEDPA deference, the Court concludes Petitioner has not shown appellate counsel rendered ineffective assistance of counsel for any specified ground. Accordingly, the state habeas court's conclusion about Ground 1(c) is likewise not objectively unreasonable. Therefore, Ground 1(c) provides no basis for federal habeas relief.

28

####    d.    Ground 1(d): Appellate Counsel's Failure to Raise Trial Counsel's Failure to Present Mitigation Evidence

Petitioner argues in Ground 1(d) of his federal petition, as he did in his state petition, that he received ineffective counsel on appeal because Mr. Persse did not raise Mr. Brunk's failure to present certain mitigation evidence. (Doc. no. 1, p. 21)

####    i.    Background

There was no discussion at the state habeas evidentiary hearing about the mitigation evidence Mr. Brunk purportedly failed to raise, (see doc. no. 8-11), and Petitioner does not clarify the mitigation evidence at issue in either his state or federal habeas petitions, (see doc. nos. 1, 8-1).  The state habeas court analyzed this ground with respect to Petitioner's self-defense argument.  (Doc. no. 8-11, p. 6.)  The state habeas court pointed out that while the trial record showed Mr. Brunk presented self-defense evidence at trial, there was also evidence presented at trial that refuted Petitioner's self-defense claim.  (Id.)  The state habeas court also cited the Georgia Supreme Court decision affirming Petitioner's conviction, noting that although there was some evidence that the victim acted aggressively towards Petitioner at first, "there was no evidence supporting Petitioner's claim that the victim assaulted him or that Petitioner was honestly trying to defend himself when he began shooting the victim and others."  (Id. (citing Wright, 300 Ga. at 188-89).)  The state habeas court further explained that eyewitnesses testified the victim did not have a gun, Petitioner shot the victim in the leg then continued to shoot him as the victim attempted to flee, and Petitioner stood over the victim while he was wounded but continued to shoot him.  (Id. (citing Wright, 300 Ga. at 188-89).)  For these reasons, the state habeas court concluded Mr. Persse was not ineffective for failing to raise a claim about self-defense on appeal because the factual basis did not support a self-

defense claim. (Id.) The state habeas court also noted Petitioner did not present any other mitigation evidence that he contends Mr. Persse should have raised on appeal. (Id.)

### ii.    Analysis

Petitioner has not demonstrated Mr. Brunk's failure to raise evidence related to a self-defense claim, or any other mitigation evidence, was deficient, nor has he demonstrated any prejudice resulting from this failure. As described, it is Petitioner's burden to prove ineffective assistance, Fugate, 261 F.3d at 1217, and his failure to specify the unraised "mitigation" evidence is fatal to his claim. Thus, Petitioner fails to show error in the state habeas court's decision that was "well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Woods, 575 U.S. at 316. Because Mr. Brunk was not ineffective, Mr. Persse is not ineffective for failing to raise Mr. Brunk's ineffectiveness on appeal. Nyhuis, 211 F.3d at 1344. Therefore, because the state court's conclusion was not an unreasonable application of Strickland or based on an unreasonable determination of the facts in light of the evidence presented, this ground is not a basis for federal relief.

### e.    Petitioner's Remaining Ineffective Assistance of Appellate Counsel Claims Form No Basis for Relief Because They Are Conclusory Claims Unsupported by Specific Factual Detail

To the extent he raises other ineffective assistance of appellate counsel claims, these claims all fail for the same reason. Petitioner generally raises ineffective assistance of appellate counsel by alleging he received ineffective assistance on appeal "in violation of Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, Strickland v. Washington, 466 U.S. 688 (1984) and Evitts v. Lucey, 470 U.S. 1065 (1985)." (Doc. no. 1, p. 19.) Furthermore, Petitioner argues Mr. Persse's ineffectiveness "includes but is not limited to" the four specific claims discussed above in Section IV.A.2 *supra*. (Id. at 20.) The Court

has addressed all of the arguably well-pled ineffective assistance of appellate counsel claims above, and thus any remaining claims in Ground 1 forms no basis for federal habeas relief.

The Rules Governing § 2254 Cases require "fact pleading" as opposed to "notice pleading" as is required under Fed. R. Civ. P. 8(a).  Borden v. Allen, 646 F.3d 785, 810 (11th Cir. 2011); see also Frazier v. Bouchard, 661 F.3d 519, 527 (11th Cir. 2011) (recognizing federal habeas petitioners must fact plead their claims to satisfy heightened pleading requirements.)

> To properly fact plead, a petitioner must state specific, particularized facts which entitle him or her to habeas corpus relief for each ground specified.  These facts must consist of sufficient detail to enable the court to determine, from the face of the petition alone, whether the petition merits further habeas corpus review.  Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.

Arrington v. Warden, GDCP, No. CV 117-022, 2017 WL 4079405, at *2 (S.D. Ga. Sept. 14, 2017) (internal quotation marks and citations omitted) (Hall, C.J.).

A sweeping and conclusory statement and string cite of constitutional amendments and cases will not suffice.  Indeed, Petitioner fails to provide any additional information or articulate any other specific facts about Mr. Persse's performance to establish habeas relief is warranted.  (See generally doc. no. 1.)  Beyond his petition, he filed no other briefing.  Accordingly, Petitioner's general ineffective assistance of appellate counsel claim, to the extent it is broader than the four specific claims addressed in Section IV.A.2 above, is a conclusory claim unsupported by specific facts that does not form the basis for federal habeas corpus relief.

**B.      Petitioner is Not Entitled to Relief on Grounds 2, 3, and 4**

In Ground 2, Petitioner argues the state habeas court and Georgia Supreme Court,

through denying his CPC application, improperly analyzed his claims of ineffective assistance of counsel by "erroneously failing to consider the ineffective assistance of trial counsel." (Doc. no. 1, p. 21.)   In Ground 3, Petitioner contends the state habeas court erred in finding he procedurally defaulted more than twenty-five grounds of error by failing to raise them in his direct appeal. (Id.)   In Ground 4, Petitioner alleges the state habeas court erred in denying him "the right to reopen and amend" his state habeas petition after Petitioner retained habeas counsel. (Id. at 21-22.)   In response, Respondent argues Grounds 2, 3, and 4 fail to state a cognizable bases for federal habeas relief because these grounds raise "alleged infirmities in state collateral proceedings" rather than violations of federal constitutional rights in Petitioner's underlying criminal case. (Doc. no. 7, pp. 10-11.)

In the Eleventh Circuit, alleged errors regarding "state collateral proceedings do not provide a basis for habeas relief.  The reasoning behind this well-established principle is straightforward:  a challenge to a state collateral proceeding does not undermine the legality of the detention or imprisonment - i.e., the conviction itself-and thus habeas relief is not an appropriate remedy."  Carroll v. Sec'y, DOC, 574 F.3d 1354, 1365 (11th Cir. 2009); see also Quince v. Crosby, 360 F.3d 1259, 1262 (11th Cir. 2004) ("[W]hile habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief.").  Here, Ground 4 clearly concerns errors the state habeas court allegedly made concerning Petitioner's right to amend his state habeas petition, which are errors entirely collateral to Petitioner's conviction.  Thus, Ground 4 is not cognizable, and Petitioner is not entitled to relief on this ground.

Grounds 2 and 3 are both framed in a way that alleges the state habeas court, and the Georgia Supreme Court for Ground 2 only, erred in analyzing and deciding substantive legal

32

issues, i.e. Petitioner's ineffective assistance of counsel claims and the procedural default of claims not raised direct appeal.   To the extent Petitioner challenges the judicial decision-making of the state habeas court and Georgia Supreme Court as errors, such challenges are to the state habeas proceedings, *not* his conviction, and are thus collateral.  Accordingly, Grounds 2 and 3 are not cognizable on federal habeas review.  See Lindsey v. Johnson, No. 7:11-CV-123, 2012 WL 3987869, at *7 (M.D. Ga. Aug. 21, 2012) (concluding ground where petitioner alleged "the state habeas court erred because of the way it ruled on Petitioner's claim" was not cognizable in federal habeas corpus because "[p]etitioner is not alleging that his Constitutional rights were violated by the state court proceedings; rather, [p]etitioner alleges that a collateral proceeding was 'unfair'"), *adopted by* 2012 WL 3987853 (M.D. Ga. Sept. 11, 2012); Slaughter v. Smith, No. 1:22-CV-2115, 2022 WL 22893335, at *3 (N.D. Ga. Dec. 13, 2022) (determining petitioner's claim that "the state habeas court erred in failing to consider the cumulative effect of the trial court and trial counsel's errors in totality" was a collateral challenge to petitioner's state habeas proceedings and not cognizable on federal habeas review), *adopted by* 2023 WL 11979644 (N.D. Ga. Jan. 4, 2023).  Accordingly, because Grounds 2, 3, and 4 all allege errors in the state habeas proceedings, Petitioner is not entitled to relief on any of these Grounds.

However, to the extent Grounds 2 and 3 can be interpreted as challenges to the merits of Petitioner's ineffective assistance of counsel and procedurally defaulted claims, Petitioner is still not entitled to relief for either Ground under this interpretation.  See Holsey v. Thompson, 462 F. App'x 915, 917-18 (11th Cir. 2012) (*per curiam*) (finding claim "the state habeas court erred in denying his ineffective assistance of counsel claim" cognizable because it was "clear enough" petitioner "intended to argue the merits of his underlying ineffective assistance of counsel claim").

Regarding Ground 2, Petitioner does not establish he is entitled to federal habeas relief for his ineffective assistance claims involving either trial or appellate counsel. Although Petitioner contends the state habeas court and Georgia Supreme Court "erroneously fail[ed] to consider the ineffective assistance of trial counsel" when analyzing his ineffective assistance claims, as explained in Section IV.D *infra*, the state habeas court concluded Petitioner's ineffective assistance of trial counsel claims were procedurally defaulted, and Petitioner does not establish cause or prejudice to overcome this default. Additionally, Petitioner's ineffective assistance of appellate counsel claims fail on the merits as detailed in Section IV.A *supra*. Therefore, even if Ground 2 were cognizable, Petitioner does not demonstrate the state habeas court and Georgia Supreme Court erred in their consideration of Petitioner's ineffective assistance of counsel claims.

Likewise, as to Ground 3, the Court considers, *infra*, the procedural default issue in connection with each ground for relief asserted in the state habeas petition and concludes Petitioner is not entitled to relief for any procedurally defaulted ground. Accordingly, Ground 3 also fails.

For these reasons, even if the Court found Grounds 2 and 3 cognizable, they nonetheless do not entitle Petitioner to relief.

**C.    Ground 5 Fails Because It Is Exceedingly Expansive and Conclusory by Merely Referencing All Grounds Raised in the State Habeas Petition**

In his federal petition, Petitioner "expressly raises" all grounds he raised in his state habeas petition, including those the state habeas court found procedurally defaulted. (Doc. no. 1, p. 19.)  As discussed in Section IV.A.2.e *supra*, the Rules Governing § 2254 Cases require "fact pleading" as opposed to "notice pleading" as is required under Fed. R. Civ. P. 8(a).

34

<u>Borden</u>, 646 F.3d at 810.  Thus, Petitioner must "state specific, particularized facts which entitle him . . . to habeas corpus relief for each ground specified."  <u>Arrington</u>, 2017 WL 4079405, at *2.  Here, by simply raising all grounds raised in the state habeas proceedings, Petitioner falls well short of fact pleading requirements.  Instead, he offers a single, conclusory allegation purporting to raise over twenty grounds without providing any specific, particularized facts.  (<u>See</u> doc. no. 1.)  Accordingly, Ground 5 is a conclusory claim unsupported by specific facts, and Petitioner is not entitled to relief on this claim.

In addition, for the sake of completeness, the Court further considers the claims apparently raised in Ground 5 and concludes all but one are procedurally defaulted, and Petitioner does not establish cause or prejudice for the default.  The Court addresses the one claim not procedurally defaulted in Section IV.E *infra*.

> **D.    Ground 5 Fails For The Additional Reason That All But One Incorporated State Ground Is Procedurally Defaulted, And The Only Such Claim Not Defaulted Fails On The Merits**
>
> > **1.    A Federal Habeas Petitioner Defaults a Claim by Failing to Properly Exhaust State Remedies**

AEDPA preserves the traditional exhaustion requirement, which requires a district court to dismiss unexhausted habeas claims the petitioner did not raise in state court, but could have raised by any available procedure.  28 U.S.C. § 2254(b)(1)(A) & (c).  A state inmate is deemed to have exhausted his state judicial remedies when he has given the state courts, or they have otherwise had, a fair opportunity to address the federal claims.  <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989).  "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."  <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 842 (1999).

Moreover, giving the state courts an opportunity to act on a petitioner's claims includes allowing the state courts to complete the appellate review process. As the Supreme Court explained:

> Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, we conclude that state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

Id. at 845. This "one full opportunity" includes pursuing discretionary review with the highest available appellate court where the highest court of the state has not opted out of this requirement. Id. "Georgia's appeal process requires that a petitioner seek a certificate of probable cause to appeal to the Georgia Supreme Court; claims not raised in an application for a certificate of probable cause are considered unexhausted on subsequent federal habeas review. Sealey v. Warden, Ga. Diagnostic Prison, 954 F.3d 1338, 1364 (11th Cir. 2020) (citations omitted); see also Pope v. Rich, 358 F.3d 852, 853 (11th Cir. 2004) (per curiam) (ruling a petitioner's "failure to apply for a certificate of probable cause to appeal the denial of his state habeas petition to the Georgia Supreme Court means that [the petitioner] has failed to exhaust all of his available state remedies.").

"A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts." Henderson v. Campbell, 353 F.3d 880, 891 (11th Cir. 2003) (quoting Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001)). The exhaustion requirement applies with equal force to all constitutional claims. See Lucas v. Sec'y, Dep't of Corr., 682 F.3d 1342, 1351-54 (11th Cir. 2012); Footman v. Singletary, 978 F.2d 1207, 1211 (11th Cir. 1992). "Ultimately, 'to exhaust state remedies fully[,] the petitioner must make the state court aware that the claims asserted present federal

36

constitutional issues.'"  Preston v. Sec'y, Fla. Dep't of Corr., 785 F.3d 449, 457 (11th Cir. 2015) (citation omitted).  Furthermore, a petitioner's failure to exhaust his claims properly ripens into a procedural default once state remedies are no longer available.  McNair v. Campbell, 416 F.3d 1291, 1305 (11th Cir. 2005).

A federal habeas petitioner can run afoul of procedural default rules in one of two ways, depending on whether the claim is an old one the petitioner already attempted to assert unsuccessfully in state court, or a new one the petitioner never attempted to raise in state court. First, a federal habeas petitioner cannot revive an old claim that a state court previously denied on independent and adequate procedural grounds.  "As a general rule, a federal habeas court may not review state court decisions on federal claims that rest on state law grounds, including procedural default grounds, that are 'independent and adequate' to support the judgment." Boyd v. Comm'r, Ala. Dep't of Corr., 697 F.3d 1320, 1335 (11th Cir. 2012).

A state court decision rests on "independent and adequate" state procedural grounds when it satisfies the following three-part test:

> First, the last state court rendering a judgment in the case must clearly and expressly say that it is relying on state procedural rules to resolve the federal claim without reaching the merits of the claim.  Second, the state court decision must rest solidly on state law grounds, and may not be intertwined with an interpretation of federal law.  Finally, the state procedural rule must be adequate; *i.e.,* it may not be applied in an arbitrary or unprecedented fashion.  The state court's procedural rule cannot be "manifestly unfair" in its treatment of the petitioner's federal constitutional claim to be considered adequate for purposes of the procedural default doctrine.  In other words, a state procedural rule cannot bar federal habeas review of a claim unless the rule is "firmly established and regularly followed."

Id. at 1336 (internal quotations and citations omitted).  Additionally, the Supreme Court has made clear that "a state procedural bar may count as an adequate and independent ground for denying a federal habeas petition even if the state court had discretion to reach the merits

37

despite the default."  Walker v. Martin, 562 U.S. 307, 311 (2011).

Second, a federal habeas petitioner runs afoul of procedural default rules when he attempts to bring a new claim in his federal petition that would be procedurally barred if he attempted to raise it in state court.  In such instances, unless the petitioner either establishes the cause and prejudice or the fundamental miscarriage of justice exception, the failure to bring the claim properly in state court has "matured into a procedural default."  Smith v. Jones, 256 F.3d 1135, 1138-39 (11th Cir. 2001).  Thus, where a state procedural bar is apparent, a court "can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief."  Smith v. Sec'y, Dep't of Corr., 572 F.3d 1327, 1342 (11th Cir. 2009) (citing Snowden v. Singletary, 135 F.3d 732, 736 (11th Cir. 1998)); Bailey v. Nagle, 172 F.3d 1299, 1303 (11th Cir. 1999).  To determine whether a claim is procedurally barred in this way, the federal court must ask whether "it is clear from state law that any future attempts at exhaustion would be futile."  See Bailey, 172 F.3d at 1305.

Simply put, if a claim has not been "fairly presented to the state courts, it is procedurally defaulted."  Jones v. Campbell, 436 F.3d 1285, 1304 (11th Cir. 2006).  To that end, absent a showing of either cause to excuse the default and actual prejudice or a fundamental miscarriage of justice, O.C.G.A. § 9-14-48(d) precludes state habeas review of any issue not preserved for collateral attack in a state court by timely objecting and raising the issue on appeal.  See Devier, 3 F.3d at 1454-55 (citing O.C.G.A. § 9-14-48(d) and upholding a finding of procedural default on numerous claims); see also Waldrip v. Head, 620 S.E.2d 829, 835 (Ga. 2005) ("Claims not raised on direct appeal are barred by procedural default, and in order to surmount the bar to a defaulted claim, one must meet the 'cause and prejudice' test."); Black v. Hardin, 336 S.E.2d 754, 755 (Ga. 1985) ("The rule now may be stated as follows:  a failure to make timely

objection to *any* alleged error or deficiency or to pursue the same on appeal ordinarily will preclude review by writ of habeas corpus."). In addition, Georgia law prohibits the assertion of state habeas claims in any successive petition that could have been asserted in the original state habeas petition. O.C.G.A. § 9-14-51; Chambers v. Thompson, 150 F.3d 1324, 1327 (11th Cir. 1998) ("The Georgia statute restricting state habeas review of claims not presented in earlier state habeas petitions can and should be enforced in federal habeas proceedings against claims never presented in state court . . . .").

  **2.**  **Ground 5 Expansively Incorporates All Six State Habeas Claims, And All But One Of These Claims Is Barred Because the State Court Finding These Claims Were Not Properly Preserved Is an Independent and Adequate State Ground for Denying Relief**

"[W]here . . . the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits." Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991); see also Wilson, 584 U.S. at 128 (applying Ylst "look through" presumption when relevant state court decision on the merits does not come accompanied with statement of reasons). Thus, because the state supreme court decision on the CPC application was not accompanied by reasons for affirming the denial of state habeas relief, (Doc. no. 8-9, Wright v. Allen, No. S24H1022 (Ga. Jan. 14, 2025)), this Court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale." Wilson, 584 U.S. at 125.

Ground 5 of the federal petition incorporates by reference state grounds 1(a) to (e), 2(a) to (d), 3, 4, 5(a) to (g) and 6(a) to (r). The Court addressed state grounds 2(a) to (d) in Section IV.A *supra*. The state habeas court ruled state grounds 1, 3, 4, 5, and 6, excluding ground 1(c), were procedurally defaulted because they were not raised on direct appeal, and under Georgia law, that failure – absent a showing of cause and actual prejudice – bars consideration in habeas

corpus.  (Doc. no. 8-7, pp. 7-10 (citing White v. Kelso, 261 Ga. 32, 401 S.E.2d 733 (1991), Black v. Harden, 255 Ga. 239, 336 S.E.2d 754 (Ga. 1985), Gaither v. Gibby, 267 Ga. 96, 475 S.E.2d 609 (1996), and § 9-14-48(d)).)  The state habeas court failed to address ground 1(c) at all, both with respect to procedural default and also with respect to the merits.  Thus, it is not procedurally defaulted, and the Court addresses the merits of this claim in Section IV.E *infra*.

Specifically, the state habeas court found that the ineffective assistance of trial counsel claims raised in grounds 1(a), (b), (d), and (e) in the state habeas petition, which are now raised generally in Ground 5, were not timely raised after Petitioner changed counsel and were not raised on direct appeal, and therefore the claims were procedurally defaulted under O.C.G.A. § 9-14-48(d).  (Doc. no. 8-7, pp. 3-4 (citing White v. Kelso, 401 S.E.2d 733 (Ga. 1991).)   In White, the Georgia Supreme Court ruled ineffectiveness of prior counsel must be raised at the first practicable time, and absent a showing of cause and prejudice, such a claim is waived.  401 S.E.2d at 734.   O.C.G.A. § 9-14-48(d) provides "absent a showing of cause for noncompliance with [procedural rules], and of actual prejudice, habeas corpus relief shall not be granted."  The state habeas court applied White and determined the ineffective assistance of trial counsel claims raised in state grounds 1(a), (b), (d) and (e) were procedurally defaulted under O.C.G.A. § 9-14-48(d).  (Doc. no. 8-7, pp. 3-4.)  Similarly, for the miscarriage of justice, confrontation rights violation, prosecutorial misconduct, and due process violations claims raised as grounds 3, 4, 5, and 6 in the state habeas petition, including all applicable subparts, now raised generally in Ground 5, the state habeas court concluded these grounds were procedurally defaulted under O.C.G.A. § 9-14-48(d) because they were not first raised on direct appeal.  (Doc. no. 8-7, pp. 7-10.)

Although the state habeas court did not explicitly state Petitioner failed to establish

40

cause and prejudice as to any of the procedurally defaulted grounds in its final order, its reliance on O.C.G.A. § 9-14-48(d) and White shows it considered whether there was cause or prejudice for Petitioner's default but did not find either showing had been made.  See Alderman v. Zant, 22 F.3d 1541, 1551 (11th Cir. 1994) ("[I]n the absence of any evidence to the contrary, the Court may presume that the [state] habeas court applied the established default rule[.]")

Because state grounds 1, 3, 4, 5, and 6, excluding ground 1(c), now incorporated generally into Ground 5, were not timely raised in the state court proceedings and were denied by the state court under state procedural default rules "firmly established and regularly followed," they are procedurally defaulted in these proceedings and provide no basis for federal habeas relief.  See Boyd, 697 F.3d at 1336; McNair, 416 F.3d at 1305; Smith, 256 F.3d at 1139.

### 3. Petitioner Cannot Satisfy the Cause and Prejudice Standard to Justify Federal Review of His Defaulted Claims, and the Miscarriage of Justice Exception Does Not Apply

"A petitioner may obtain federal review of a procedurally defaulted claim if he can show both cause for the default and actual prejudice resulting from the default."  Jones, 436 F.3d at 1304 (citing Wainwright v. Sykes, 433 U.S. 72, 97 (1977)); Shinn, 596 U.S. at 379 (same).  "Cause for a procedural default exists where something *external* to the petitioner, something that cannot fairly be attributed to him[,] . . . impeded [his] efforts to comply with the State's procedural rule."  Maples v. Thomas, 565 U.S. 266, 280 (2012) (internal quotation marks omitted).  "Once cause is proved, a petitioner also must prove prejudice.  He must show 'not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'"  Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting United

States v. Frady, 456 U.S. 152, 170 (1982)); Shinn, 596 U.S. at 379-80 (same). For example, procedural default does not preclude federal habeas review when

> (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law *requires* that an "ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral proceeding."

Trevino v. Thaler, 569 U.S. 413, 423 (2013); Martinez v. Ryan, 566 U.S. 1, 13-14, 16-17 (2012).

Petitioner has presented no valid justification for failing to raise his defaulted claims at the proper time in his state proceedings, let alone something external to him that cannot be fairly attributed to him. Although ineffective assistance of counsel may demonstrate cause, see Nyhuis, 211 F.3d at 1344, as discussed in Section IV.A above, Petitioner has no valid ineffective assistance of appellate counsel claim, and he does not show any of his defaulted claims against trial counsel are substantial. See also Shinn, 596 U.S. at 380 (recognizing constitutionally ineffective assistance of counsel may excuse procedural default but "'[a]ttorney ignorance or inadvertence' cannot excuse procedural default"). Further, Petitioner fails to argue there was cause and prejudice for his failure to present his state habeas grounds relating to miscarriage of justice, confrontation rights violations, prosecutorial misconduct, and due process violations, on direct appeal as asserted in state grounds 3, 4, 5, and 6. As discussed below, Petitioner does not meet the cause and prejudice standard and has not shown that his claims are substantial.

        **a.**      **Petitioner Fails to Establish Cause and Prejudice for His Procedural Default of the State Claims Incorporated into Federal Ground 5**

            **i.**      **Ineffective Assistance of Trial Counsel Claims**

As to the ineffective assistance of trial counsel claims asserted in state ground 1, excepting only state ground 1(c), Petitioner argues Mr. Brunk was ineffective because (a) he rendered constitutionally deficient performance, and absent this deficiency there would have been a reasonable probability of a not guilty verdict, (b), his performance led the jury to determine Petitioner's guilt "without mention of the exclusion of [the] victim's use of narcotic [as shown by] toxicology evidence," (d) he failed to challenge the exclusion of the victim's "prior offense" by providing independent toxicology evidence, and (e) he failed to submit evidence of the prior difficulties between Petitioner and the victim. (Doc. no. 8-1, p. 8.)

Petitioner fails to establish cause because he fails to show any of these claims are substantial. As described, he merely incorporates his state ineffective assistance of trial counsel claims in Ground 5 and provides no justification for why any of these claims are substantial. Furthermore, he does not provide any argument justifying his failure to fully exhaust his state remedies for these four claims. Thus, Petitioner fails to demonstrate "something external" to him prevented him from fully asserting these claims in the state courts. Maples, 565 U.S. at 266. He also fails to establish prejudice because he has not provided any argument to suggest there was a reasonable probability of acquittal based on any of his ineffective assistance of counsel claims.

Accordingly, as Petitioner does not show either cause or prejudice for failing to raise state claims 1(a), (b), (d), and (e) as incorporated by reference into Ground 5. Thus, Petitioner fails to show federal review of his defaulted claims is warranted.

### ii.   State Grounds 3, 4, 5, and 6

Upon a thorough review of all claims raised in state grounds 3, 4, 5, and 6, the Court concludes Petitioner has failed to establish cause or prejudice.  Nowhere does Petitioner offer any justification for omitting these claims from his direct appeal, much less does he contend that something external to him prevented him from doing so.  (See doc. no. 1.)  To the extent he may rely on ineffective assistance of counsel to justify his failure to raise these claims on direct appeal, as explained above, he has no meritorious ineffective assistance of appellate counsel claims.  Accordingly, he fails to establish cause for his default.  He further provides no argument to show any of these alleged errors "worked to his *actual* and substantial disadvantage" to establish prejudice.  Johnson, 256 F.3d at 1171.  For these reasons, Petitioner fails to satisfy the cause and prejudice exception to procedural default, and thus he fails to show federal review of his defaulted claims is warranted.

### b.   No Fundamental Miscarriage of Justice

"Additionally, in extraordinary cases, a federal court may grant a habeas petition without a showing of cause and prejudice to correct a fundamental miscarriage of justice." Jones, 436 F.3d at 1304 (citing Murray v. Carrier, 477 U.S. 478, 496 (1986)).  The narrow fundamental miscarriage of justice exception encompasses the extraordinary instance in which a constitutional violation probably has resulted in the conviction of one actually innocent of the crime.  Murray, 477 U.S. at 496; see also Johnson, 256 F.3d at 1171 ("This exception is exceedingly narrow in scope, as it concerns a petition's 'actual' innocence rather than his 'legal' innocence.").  In McQuiggin v. Perkins, the Supreme Court held that this exception survived AEDPA's passage but "applies to a severely confined category:  cases in which new evidence shows it is more likely than not that no reasonable juror would have convicted [the

44

petitioner]."  569 U.S. 383, 395 (2013) (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)).

Although one of his defaulted state habeas grounds, raised generally in the instant proceedings in Ground 5, concerns a miscarriage of justice, Petitioner does not argue, let alone submit any evidence, that he is probably factually innocent of the crimes for which he was convicted.  (See doc. no. 1.)  Specifically, in this state habeas miscarriage of justice ground, Petitioner alleges "newly discovered evidence . . . has been intentionally and unprofessionally not tested and destroyed, [which] can be obtained from records of GBI," and these acts "violated his substantive due process [rights]" and constituted "a flagrant miscarriage of justice." (Doc. no. 8-1, p. 10.)  Petitioner does not describe this "newly discovered evidence" or otherwise explain its significance in undermining his guilt.  Conclusory statements that it has been destroyed will not suffice.  Moreover, he does not detail any newly discovered evidence in his federal petition or otherwise argue he is actually innocent of the crimes for which he was convicted.  (See doc. no. 1.)

Accordingly, Petitioner fails to establish the fundamental miscarriage of justice exception applies.  Thus, Petitioner's claims in Ground 5, except for trial counsel ineffectiveness claim described below in Section IV.E infra, are defaulted, are not excused by any exception, and provide no basis for federal habeas corpus relief.

### E.   On *De Novo* Review, Petitioner is Not Entitled to Relief on State Ground 1(c)

In state ground 1(c), Petitioner alleges Mr. Brunk failed to submit evidence at sentencing concerning provocation, the victim's use of a gun, a "GSR Report" and the distorted and "mushroomed" bullet. (Doc. no. 8-1, p. 8.)  Because the state habeas court did not address this claim, Petitioner is entitled to *de novo* review.  See Williams v. Alabama, 791 F.3d 1267, 1273 (11th Cir. 2015) ("[R]esting between AEDPA deference and procedural default is a third

45

path.  If the state court did not reach the merits of a petitioner's claim based on some ground that is not adequate to bar federal review, we must review the claim *de novo.*" (citing Cone v. Bell, 556 U.S. 449, 472 (2009))); Berghuis v. Thompkins, 560 U.S. 370, 390, 130 S.Ct. 2250, 176 L.Ed.2d 1098 (2010) ("Courts can . . . deny writs of habeas corpus under § 2254 by engaging in *de novo* review when it is unclear whether AEDPA deference applies, because a habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on *de novo* review."); Ogle v. Johnson, 696 F. Supp. 2d 1345, 1353 (S.D. Ga. 2009) ("Habeas petitioners have one avenue to non-deferential federal review of their claims:  if a petitioner has presented a claim to a state habeas court, but the state court did not address it, then a federal district court will address the claim *de novo.*" (citation omitted)).

Nonetheless, under a *de novo* review, Petitioner is not entitled to relief on this ineffective assistance of trial counsel claim, as he fails to establish Mr. Brunk rendered deficient performance at his sentencing hearing or that he was prejudiced as a result.  At Petitioner's sentencing, Mr. Brunk presented argument on Petitioner's behalf and specifically called upon Petitioner's trial testimony.  (Doc. no. 8-16, pp. 81-82.)  In particular, Mr. Brunk stated:

> Judge, you're intimately familiar with this case now having seen it before you twice.  We just ask – of course, I know a couple of the charges merge for sentencing purposes.  Additionally, we'd ask the Court to consider concurrent treatment of these matters on the charges where it's possible to consider concurrent treatment.  We stand by [Petitioner's] earlier testimony.  And if we could maybe have an opportunity after he is sentenced to have a brief moment with his mother.

(Id.)

The prosecution then presented remarks from the victim's mother and a family friend. (Id. at 83-84.)  The victim's mother described her fondness for Petitioner, who was a family

46

friend, but that she "just hate[s] [that] he killed [victim] for no reason." (Id.) The family friend requested the maximum sentence "because we had a person that was took [sic] away from us that we can never get back[.]" (Id. at 84.) The prosecutor then argued for a sentence of life plus thirty years, pointing to Petitioner's long criminal history and Petitioner's conduct in pursuing the victim for "the length of a football field while repeatedly shooting at him with a .45 semiautomatic pistol in the back three times, once in the hand, and then finally, once that victim lay on the ground helpless and unable to do anything for himself, in the chest[.]" (Id. at 85-86.) The prosecutor also raised that Petitioner fled to South Carolina, then Savannah, and later New York, and that he also threw away the murder weapon. (Id. at 86.) The prosecutor concluded by pointing out that Petitioner "denies and refuses to accept responsibility" and "stands by that position that he's done nothing wrong." (Id. at 86-87.) After hearing from both sides, the Court sentenced Petitioner to life in prison with thirty years consecutive to follow. (Id. at 87-88.)

Here, Petitioner does not show Mr. Brunk's performance at sentencing "fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. Sure, Mr. Brunk could have given a more detailed argument in support of a lesser sentence, but there is nothing to indicate his reliance on the trial court judge's recollection of Petitioner's trial testimony was an unreasonable strategic approach. At trial, Petitioner testified that the victim's brother and others "jumped" him before the shooting. (Doc. no. 8-15, p. 219.) He then described that the victim found him some time later and acted aggressively towards him. (Id. at 224-225.) He also testified that the victim had a gun and shot at him. (Id. at 225, 251-52; doc. no. 8-16, pp. 2-4.) All in all, throughout his trial testimony, Petitioner described a series of events in which he painted the victim as the primary aggressor, rather than himself, and he described that the

47

victim had shot at him as well.  (See doc. no. 8-15, pp. 214-252; doc. no. 8-16, pp. 1-16.)

By expressly invoking Petitioner's trial testimony at sentencing, Mr. Brunk by reference incorporated evidence of the victim's provocation and use of a firearm.  His strategic decision to proceed with his argument this way is entitled to significant deference, and Petitioner does not show it was so patently unreasonable such that no competent counsel would have made this choice.  Strickland, 466 U.S. at 690.  That the trial court judge ultimately did not find this argument persuasive and instead imposed a life sentence plus additional years to serve does not mean Mr. Brunk performed deficiently.  Petitioner further does not explain how Mr. Brunk's failure to also raise the GSR Report and bullet evidence was deficient.  In sum, Petitioner fails to establish Mr. Brunk was deficient in failing to offer the mitigation evidence described in his state habeas ground 1(c) because Mr. Brunk's argument incorporated these themes, and Petitioner does not show this approach was objectively unreasonable under the circumstances.

Moreover, even if Mr. Brunk was deficient, Petitioner fails to establish there was a reasonable probability he would have received a different sentence but for Mr. Brunk's errors.  First, Petitioner does not demonstrate how the "GSR Report" or distorted and "mushroomed" bullet would have led the judge to declare a lesser sentence.  (See generally doc. no. 1.)  He does not detail the information contained in the GSR Report or how it would have been beneficial to him.  He further does not elaborate on how the shape or quality of a bullet would have impacted his sentence.  Additionally, concerning the evidence of provocation and the victim's use of a gun, Petitioner again does not show how Mr. Brunk's invocation of Petitioner's trial testimony without reciting it or describing it in detail would have resulted in a different sentence.  Indeed, as described, Mr. Brunk expressly relied on Petitioner's trial

testimony, in which Petitioner testified to the victim's aggression and use of a gun. (See doc. no. 8-15, pp. pp. 214-252; doc. no. 8-16, pp. 1-16.) Petitioner does not explain how any further discussion of provocation or the victim's use of a gun would have changed his sentence when defense counsel referenced Petitioner's testimony concerning these very facts in his sentencing argument. Significantly, the state trial judge presided over the entire trial and heard this testimony firsthand. Petitioner further fails to explain how the mitigation evidence would have overcome the prosecution's arguments at sentencing. Therefore, because Petitioner fails to demonstrate a reasonable probability that the result of his sentencing hearing would have been any different had Mr. Brunk offered the described mitigation evidence, he fails to establish prejudice.

For the above-described reasons, Petitioner neither establishes deficient performance nor prejudice, and thus his ineffective assistance of trial counsel claim regarding Mr. Brunk's performance at sentencing fails, even under a *de novo* review. Therefore, this claim provides no basis for federal habeas relief.

## V.    CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the § 2254 petition be **DENIED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 2nd day of April, 2026, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA